**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **FOOD EMPLOYERS LABOR RELATIONS ASSOCIATION AND UNITED FOOD & COMMERCIAL WORKERS HEALTH AND WELFARE FUND,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No.: GJH-14-1273** |
| **DAVID DOVE,** | * | |
| **Defendant.** | * | |
| | ****** | |

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses the Motion for Final Judgment by Default (the "Motion") (ECF No. 6) filed by Food Employers Labor Relations Association and United Food & Commercial Workers Health and Welfare Fund ("Plaintiff" or "Fund"). Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover overpayments from David Dove ("Defendant") under the equitable theories of unjust enrichment and restitution. *See* 29 U.S.C. § 1001 (2012); 29 U.S.C. § 1132(a)(3)(B). The Clerk entered default against Defendant on July 18, 2014. ECF No. 5. Defendant has not filed a response and the time for doing so has passed. *See* Local Rule 105.2(a) (D. Md.). This precise fact pattern represents a case of first impression in this Court, the Fourth Circuit, and the Supreme Court.

Pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, the Honorable George Hazel referred this matter to me for making a Report and Recommendation concerning default

judgment and/or damages. For the reasons stated herein, I recommend the Court DENY the Motion, and have provided an additional recommendation regarding reasonable attorneys' fees.

## I. Factual and Procedural Background

Plaintiff Fund qualifies as an employer welfare benefit plan under ERISA. 29 U.S.C. § 1002(1). It also qualifies as a multiemployer plan. 29 U.S.C. § 1002(37)(A). Pursuant to a health insurance contract (ECF No. 6) entered into by Plaintiff and Defendant at some time in or before July, 2011, Defendant became a participant in the Fund within the meaning of ERISA. 29 U.S.C. § 1002(7). Defendant was a covered full time employee under the Fund on July 31, 2011, and his wife, Helen Dove, was also covered by Fund insurance as his dependent. On August 1, 2011, Defendant became a part time covered employee, requiring that he pay an additional premium to maintain Mrs. Dove's coverage. He did not pay this premium. In August and September, 2011, Mrs. Dove incurred medical expenses which the Fund paid. Mrs. Dove subsequently passed away in September, 2011. On April 15, 2014, after Plaintiff sent numerous letters to Defendant seeking reimbursement, it brought a claim for reimbursement of these medical expenses. ECF No. 1. Following the clerk's entry of default on July 25, 2014, Plaintiff filed the Motion on August 6, 2014. It requests an entry of default on its equitable claims under ERISA, $9,345.53 in reimbursements, and $11,393.82 in attorneys' fees and costs.

## II. Standard of Review

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*,

232 F. Supp. 2d 491, 494 (D. Md. 2002). The Fourth Circuit has a "strong policy that cases be decided on the merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). In determining liability, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability (*See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). If the Court finds liability, the Court then turns to the determination of damages. *Id*.

The Court cannot accept Plaintiff's factual allegations as to damages, and must make an independent determination. *See Securities and Exchange Comm'n v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2007). Federal Rule 54 limits the type and amount of damages that may be entered as a result of a party's default, stating that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so. *See, e.g.*, *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794-95 (D. Md. 2010); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 9-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought); *DirecTV, Inc. v. Yancey,* No. 4-0011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that a hearing was "not required to enter default judgment" because plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits"). The Court may rely instead on affidavits or documentary evidence of record to determine the appropriate sum. *See, e.g.*, *Monge*, 751 F. Supp. 2d at 794-95 (citing cases in which damages were awarded after a default judgment, and without a hearing, based on affidavits or other documentary evidence).

## III. Discussion

For the reasons stated below, it is my recommendation that Plaintiff be denied default judgment on its claims of unjust enrichment and restitution under ERISA. If the Court grants the Motion, I recommend a hearing regarding the damages owed to Plaintiff under the contract. Finally, even if a hearing is deemed unnecessary, I recommend utilizing the measure of reasonable attorneys' fees provided, which is consistent with our local rules.

### A. Plaintiff is not entitled to a judgment for unjust enrichment or restitution under ERISA.

This Court treats an actionable claim for unjust enrichment as encompassing a related claim for restitution in the amount the defendant has been unjustly enriched. *See, e.g. United Food and Commercial Workers Unions v. Moore*, No. 12-0802, 2012 WL 1790015, at *3-4 (D. Md. May 16, 2012) (hereinafter *Moore*) (holding that the defendant had "been unjustly enriched in the amount of $7,252.85 and the [plaintiff] [was] entitled to restitution of this amount"). As such, Plaintiff's claims for unjust enrichment and restitution will be considered together.

Under ERISA, only specific individuals and entities may bring claims for relief. Claims may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

29 U.S.C. § 1132(a)(3). Plaintiff is a fiduciary, as defined under ERISA, and may bring claims for "appropriate equitable relief." Plaintiff alleges that its claims for unjust enrichment and restitution are such claims.

The Supreme Court has explained that "equitable relief" under ERISA is constrained to "the kinds of relief 'typically available in equity' in the days of 'the divided bench' before law

and equity merged." *U.S. Airways, Inc v. McCutchen*, 569 U.S. __ (slip op., at 5), 133 S. Ct. 1537, 1544 (2013) (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993). The Supreme Court has also admonished courts against creating remedies under the federal common law beyond those Congress enacted through ERISA. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985) (noting that "[t]he six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted" and "ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a comprehensive and reticulated statute" "provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly" (citations omitted)); *see also Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 425 (4th Cir. 2005) (hereinafter *Cohen*) (citing *Russell* for the same proposition).

Bearing this in mind, the Fourth Circuit created a "common law remedy of unjust enrichment" within ERISA. *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 994 (4th Cir. 1990) (hereinafter *Waller*). The Fourth Circuit has indicated that this remedy is a "narrow" one. *Cohen*, 423 F.3d at 426 (4th Cir. 2005). Consistent with Supreme Court holdings, this Court has held that these claims must be for equitable relief, as traditionally defined. *See Mertens*, 508 U.S. at 255 (1993) (holding that ERISA authorizes only "equitable relief," and "[m]oney damages are, of course, the classic form of legal relief"); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-13 (2002) (hereinafter *Great-West*) (noting that "not all relief falling under the rubric of restitution is available in equity," and that, instead, "whether it is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought" (citations omitted)); *J.J. Crewe & Son, Inc. Profit Sharing Plan v. Orye*, No. 11-2924, 2012 WL 2339740, at *4 (D. Md. June 19, 2012) (holding that "imposition

of personal liability for money damages is not 'equitable relief,' permitted under § 502(a)(3) of ERISA, regardless of whether a claim seeking such relief is characterized as a claim for 'unjust enrichment'" (citations omitted)).

*i. Plaintiff's claim for unjust enrichment is consistent with the contract*

The Supreme Court has explained that a claim for unjust enrichment under ERISA is not actionable where the claim would be inconsistent with the contract. *Sereboff v. Mid Atlantic Medical Services*, 547 U.S. 356, 362-63 (2006) (hereinafter *Sereboff*). The Fourth Circuit has said pointedly that a claim for equitable relief under ERISA is only actionable when the claim "further[s] the contract between the parties"—where, for example, the contract "provide[s] for repayment of . . . advanced monies," and the plaintiff's claim is for repayment of advanced monies that allegedly unjustly enriched the defendant. *See Waller*, 906 F.2d at 993-94 (4th Cir. 1990).

The claim here is for recovery of benefits paid in error, and the contract that Plaintiff and Defendant signed allows for recovery of benefits paid in error. It reads, in relevant part:

> If the Fund pays benefits in error . . . the Fund shall be entitled to recover such benefits. . . . [Y]ou and your dependent agree to cooperate with the Fund in reimbursing it for all of its costs and expenses related to the collection of those benefits. In the event you, or if applicable, your dependent or beneficiary, fail to reimburse the Fund and the Fund is required to pursue legal action against you or your dependent or beneficiary to obtain repayment of the benefits advanced by the Fund, you or your dependent or beneficiary shall pay all costs and expenses, including attorneys' fees and costs, incurred by the Fund in connection with the collection of any amounts owed the Fund or the enforcement of any of the Fund's rights to reimbursement.

ECF No. 6. The contract is consistent with Plaintiff's claim for unjust enrichment under ERISA. *See, e.g., Moore*, 2012 WL 1790015, at *3 (allowing a fund to bring a claim for unjust enrichment under ERISA for "reimbursement of erroneously paid benefits" where the plaintiff was already reimbursed under Workers Compensation legislation and the contract included a

"promise to return all monies paid by the Fund . . . if the [Workers Compensation] Commission determines that my claim is compensable"). Nonetheless, having a contractual agreement for the "recovery of benefits" is not controlling here.

*ii. Defendant never had possession of Plaintiff's property*

The Supreme Court and Fourth Circuit have also consistently held that an actionable claim for equitable relief under ERISA must involve the plaintiff bringing "a constructive trust or equitable lien on a specifically identified fund, not from [the defendant's] assets generally." *Sereboff*, 547 U.S. at 363. The Supreme Court has indicated that where a plaintiff can "*not* assert title or right to possession of particular property, but . . . might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," he merely has "a right to restitution *at law*," not an actionable claim for equitable relief under ERISA. *Great-West*, 534 U.S. at 213 (emphasis in original). Moreover, the Supreme Court has explained that an actionable claim must involve an attempt to reclaim property within the defendant's "control" and within "specifically identifiable funds." *See, e.g., U.S. Airways, Inc v. McCutchen*, 569 U.S. __ (slip op., at 5) (2013); *Sereboff*, 547 U.S. at 362-63 (noting such property must also be within the defendant's "possession").

Due to the requirement that the funds in question be in the defendant's control, actionable claims for equitable relief under ERISA tend to involve reimbursements to avoid double recovery by the defendant—where a defendant has been paid by their insurance company and is subsequently paid by a third party for the same thing. That is the type of case the Fourth Circuit had in mind when it developed the narrow equitable remedy. *See Waller*, 906 F.2d at 993 (4th Cir. 1990) (finding for the plaintiff in part because "the facts of the instant case fit the archetypal unjust enrichment scenario" as defendant received "a double recovery despite knowing about the

plan's reimbursement provision"). These types of claims have the critical characteristic of involving a plaintiff who pays a beneficiary or plan participant directly, rather than a plaintiff who pays a third party for services rendered to a beneficiary.

In this case, Defendant, Mr. Dove, has not experienced a double recovery. The health expenses incurred by Mrs. Dove were paid immediately by Plaintiff to the hospitals and other healthcare providers that rendered her care. More importantly, Defendant was never in possession of the money Plaintiff is claiming. Plaintiff has not identified a specific, identifiable trust where the money can be found. This is not the archetypical double-recovery situation envisioned by the Fourth Circuit, nor does it fall within the category of claims traditionally available at equity. This is simply the situation of a mistaken payment by an insurer to a third party. Plaintiff may have shown "just grounds for recovering money to pay for some benefit" Defendant received. *Great-West*, 534 U.S. at 213. However, such a showing merely entitles Plaintiff to "a right to restitution at law," not a claim for equitable relief under ERISA. *Id.* Thus, I suggest that such a claim is lacking in this case.

It is important to note that neither the Fourth Circuit nor the Supreme Court has dealt directly with a case with this fact pattern, but additional support for this conclusion can be found in Fourth Circuit dicta. The court in *Cohen* wrote that the plaintiff's claim for reimbursement of overpaid disability insurance "is arguably unauthorized under § 1132(a)(3)," because the Supreme Court in *Great-West* "denied a fiduciary's restitution claim against a beneficiary when the property sought could no longer be traced to a particular fund or property, because the fiduciary [was] seeking a legal remedy—the imposition of personal liability on the beneficiary to pay a sum of money owed to the plan—outside the equitable relief afforded to fiduciaries in civil actions under § 504(a)(3)." *Cohen*, 423 F.3d at 425 (4th Cir. 2005); *see also Great-West*, 534

U.S. at 214. Here, too, Plaintiff seeks reimbursement of moneys that can "no longer be traced to a particular fund"—the money has been paid directly to third party medical care providers and is not within Defendant's assets or control. Further clarifying that the same results inhere from a claim of unjust enrichment, the Fourth Circuit added that had the plaintiff "brought [an] unjust enrichment claim under § 504(a)(3), its claim would have [also] been barred by the [Supreme] Court's decision in *Great-West*, given that Provident would then be seeking a legal remedy in the form of a money judgment." *Cohen*, 423 F.3d at 425 (4th Cir. 2005). However, because *Cohen* was ultimately decided on the issue of whether the equitable claims under ERISA would further the contract, persuasive authority is helpful. *Id.* at 426.

All but one circuit that has considered this question has deemed "control" of the disputed *res* to be a required element for an actionable claim at equity under ERISA. The Fifth Circuit explained that "the *sine qua non*," or determining factor, "of restitutionary recovery available under § 502(a)(3) is a defendant's possession of the disputed *res*." *Amschwand v. Spherion Corp.*, 505 F.3d 342, 346 (5th Cir. 2007). "Possession is the key to awarding equitable restitution in the form of a constructive trust or equitable lien," *id.* at 347. The Second Circuit similarly held that what distinguishes a plaintiff who is able to recover reimbursements of overpaid benefits is whether the defendant "did, at some point, have possession and control of the specific portion of the particular fund sought by the insurer." *Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654, 664 (2d Cir. 2013). The Ninth Circuit, too, has developed a test that lists possession among the requirements for an actionable claim. It recently cited the reasoning of Justice Roberts' unanimous opinion in *Sereboff* to identify "three criteria for securing an equitable lien by agreement in an ERISA action"—1) "a promise by the beneficiary to reimburse the fiduciary for benefits paid under the plan in the event of a recovery from a third party,"

2) "the reimbursement agreement must specifically identify a particular fund, distinct from the beneficiary's general assets, from which the fiduciary will be reimbursed," and 3) "the funds specifically identified by the fiduciary must be within the possession and control of the beneficiary." *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1092-93 (9th Cir. 2012) (citations omitted) (*citing Sereboff*, 547 U.S. at 363-64). There, as with Mr. Dove, the plaintiff had entered into a contract specifically promising to repay overpayments. *Bilyeu*, 683 F.3d at 1093. The Ninth Circuit nonetheless held for the defendant because neither the agreement nor the lawsuit specified a particular fund from which the plaintiff would recover the lost *res*, and the plaintiff had not proven that the money was within the defendant's control. *Id.* at 1093-94. Here, too, Plaintiff has not specified a particular fund from which it hopes to recover, and the money that has been spent by Plaintiff has never been in Defendant's control.

Even where circuit courts have found equitable ERISA claims to be actionable in instances where the defendant is no longer in direct possession of the monies in question (due to having spent or comingled those funds), they still require that the funds were at some point transferred directly from the plaintiff to the defendant. *See, e.g., Cusson v. Liberty Life Assur. Co. of Boston*, 592 F.3d 215, 231 (1st Cir. 2010) (unlike the money to be reimbursed in *Great-West*, the money to be reimbursed in *Cusson* "was paid to Cusson rather than into a separate trust over which she has no control"); *Funk v. CIGNA Group Ins.*, 648 F.3d 182, 194 (3d Cir. 2011) (holding that there was an equitable claim under ERISA where "there was an equitable lien by agreement that attached to the Social Security award as soon as [the defendant] *received* [the money]" (emphasis added)); *Longaberger Co. v. Kolt*, 586 F.3d 459, 467 (6th Cir. 2009) (holding that the plaintiff's "equitable lien attached to the settlement fund when it was identified and *received*" by the defendant (emphasis added); *Id.* at 469 (holding that the equitable claim

under ERISA was actionable because defendant "properly identified a specific fund . . . that was in the *possession* and *legal control* of [the defendant], but belonged in good conscience to the Plan" (emphasis added)); *see also Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 620-21 (7th Cir. 2008) (which, although it did involve a defendant who had direct control of the *res* in question, did not specifically indicate that such control was a necessary condition for an actionable equity claim under ERISA).

I am persuaded that a claim for equitable relief under ERISA is only actionable in the Fourth Circuit where a defendant has control over a plaintiff's claimed property. As Defendant here was never in control of Plaintiff's claimed *res*, I recommend that the Motion be denied.

**B. Damages**

In the event the Court determines the Motion should be granted, the question of reimbursement of medical payments and reasonable attorneys' fees must be addressed. Plaintiff's Motion asserts that Defendant owes:

a) $9,345.53 in medical reimbursements,

b) $10,810.50 in attorneys' fees, and

c) $583.32 in costs.

In support of its request for reimbursement of medical expenses, Plaintiff submits the declaration of William R. Jensen, President of Associated Administrators LLC. ECF No. 6. In support of its request for reasonable attorneys' fees and costs, Plaintiff submits the declaration of Frederick M. Marx (ECF No. 6) and an itemization of hours and costs (ECF No. 6, Ex. 1). I conclude there is inadequate evidence with respect to damages. *See Monge*, 751 F. Supp. 2d at 794-96. If default judgment is granted, I recommend that the Court hold a hearing regarding medical reimbursements and cap the available attorneys' fees consistent with our local rules.

*a) Reimbursable Medical Expenses*

In or before July, 2011, the parties entered into a medical insurance contract. Under the terms of the contract, Plaintiff was required to reimburse Defendant for benefits paid "in error." ECF No. 6. Plaintiff alleges there were $9,345.53 of such medical payments, but does not explain when a payment can be deemed to have been made "in error" under the Plan. It is unclear whether Mrs. Dove's passing in early September would affect Plaintiff's ability to end her coverage without taking additional steps to protect her rights. The Fund notes that it sent a letter to Mrs. Dove on November 4, 2011, informing her of her ability and right[1] to continue her coverage under the Consolidated Omnibus Budget Reconciliation Act (COBRA). 29 U.S.C. § 1161. Thus, had Mrs. Dove received that letter, and indicated that she would like to continue her coverage, and paid any additional funds due, the medical expenses Plaintiff claims would have been covered under the plan. Mrs. Dove had passed away by the time the letter was mailed. It is unclear how this impacts her right, or Defendant's right, to continue or reinstate her coverage.

*b) Attorneys' Fees and Costs*

Plaintiff alleges Defendant owes $10,810.50 in attorneys' fees and $583.32 in costs. In an ERISA action, a district court may award reasonable attorneys' fees and costs to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved "some degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citing *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 245 (2010) (citation omitted)). Should the Court grant Plaintiff's Motion, it would be deemed a "prevailing party," and would be entitled to attorneys' fees.

[1] COBRA indicates, in relevant part, that "[t]he plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). Plaintiff admits that Mrs. Dove was a qualified beneficiary, and that Mr. Dove's loss of full time employment was a qualifying event. ECF No. 6.

The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee. The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 243 (4th Cir. 2009). The Court has endorsed a list of twelve factors, first articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which aid a court in determining a reasonable fee. These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717-19. The Fourth Circuit has directed courts to consider these twelve factors when calculating the lodestar amount. *Robinson,* 560 F.3d at 243-44.

A party seeking a fee award "must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which she seeks an award. *See id.* at 244 (citing *Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (citation omitted)). However, failing to provide affidavits from independent counsel is not fatal, for the Court may rely on its own knowledge of the market in determining reasonable fees for that community.

While Plaintiff has not provided information regarding the local market rate, the 2011 and 2014 Local Rules provide guidelines for determining an attorney's reasonably hourly rate in Maryland for the relevant periods. The 2011 Local Rules provide the following reasonable hourly rates for work completed before July, 2014:

a. Lawyers admitted to the bar for less than five (5) years: $150-190.
b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-250.
c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-300.
d. Lawyers admitted to the bar for fifteen (15) years or more: $275-400.
e. Paralegals and law clerks: $95-115.

Local Rules App. B, 3 (D. Md., July, 2011). The 2014 Local Rules provide the following reasonable hourly rates for work completed in or after July, 2014:

a. Lawyers admitted to the bar for less than five (5) years: $150-225.
b. Lawyers admitted to the bar for five (5) to eight (8) years: $165-300.
c. Lawyers admitted to the bar for nine (9) to fourteen (14) years: $225-350.
d. Lawyers admitted to the bar for fifteen (15) to nineteen (19) years: $275-425.
e. Lawyers admitted to the bar for twenty (20) years or more: $300-$475
f. Paralegals and law clerks: $95-150.

Local Rules App. B, 3 (D. Md., July, 2014).

Plaintiff filed the declaration of Mr. Frederick Marx, a principal at the law firm of Slevin & Hart, P.C., to support its contention that Plaintiff has incurred $10,810.50 in attorneys' fees. ECF 6. Plaintiff also provided a detailed itemization of legal fees and costs. ECF 6, Ex. 1. This itemization includes a great deal of block reporting and many hours for conferences. While compensable hours can include conferences, it is difficult to ascertain whether these particular conferences are compensable without knowing who attended each and what was discussed. As such, I consider these conferences non-compensable. Attorney Sarah Sanchez was described as an attorney who worked on this case, but she did not appear in the itemized report.

The tables below are based on these considerations and our Local Rules for the relevant time periods of work.

**Based on 2011 Local Rules**

| Attorney / Paralegal | Years Practicing | Requested Rate | Maximum Reasonable Rate (2011 Local Rules) | Pre-July 2014 Hours | Maximum Reasonable Attorneys' Fees |
|---|---|---|---|---|---|
| **Frederick Marx** | 34 | $490.00 | $400.00 | 0.3 | $120.00 |
| **Paul Esposito** | 7 | $340.00 | $250.00 | 0.4 | $100.00 |
| **Frances McCorkle** | 2 | $285.00 | $190.00 | 7.8 | $1,482.00 |
| **Rachel Hansen** | Paralegal | $190.00 | $115.00 | 3.4 | $391.00 |
| **Ashley Rhoades** | Paralegal | $190.00 | $115.00 | 1.8 | $207.00 |
| **Robert Romo** | Paralegal | $190.00 | $115.00 | 1.7 | $195.50 |

**Based on 2014 Local Rules**

| Attorney / Paralegal | Years Practicing | Requested Rate | Maximum Reasonable Rate (2014 Local Rules) | Post-July 2014 Hours | Maximum Reasonable Attorneys' Fees |
|---|---|---|---|---|---|
| **Frederick Marx** | 34 | $490.00 | $475.00 | 0.4 | $190.00 |
| **Paul Esposito** | 7 | $340.00 | $300.00 | 0 | $0.00 |
| **Frances McCorkle** | 2 | $285.00 | $225.00 | 2.3 | $517.50 |
| **Rachel Hansen** | Paralegal | $190.00 | $150.00 | 0 | $0.00 |
| **Ashley Rhoades** | Paralegal | $190.00 | $150.00 | 0 | $0.00 |
| **Robert Romo** | Paralegal | $190.00 | $150.00 | 10.5 | $1,575.00 |

| Total Reasonable Fees | | | | | $4,778.00 |
|---|---|---|---|---|---|

Based on the considerations describe above, and using the rates allowed by our Local Rules, Plaintiff's maximum reasonable attorneys' fees are $4,778.00.

## IV. Conclusion

Based on the foregoing, it is my recommendation that the Court DENY the Motion.

November 12, 2014

/s/
Charles B. Day
United States Magistrate Judge

CBD/sdh